## Case No. 12,912.

### SISSON et al. v. GILBERT et al.

[9 Blatchf. 185; 5 Fish. Pat. Cas. 109.] [1]

Circuit Court, N. D. New York. Oct. 10, 1871.

PATENTS—PUBLIC USE FOR TWO YEARS—CONSENT AND ALLOWANCE—EXPERIMENTAL USE—COSTS.

1. The fact that an invention was in public use and on sale, with the consent and allowance of the inventor, more than two years before his application for a patent, renders the patent invalid, however great the hindrances to the application, and whether caused by the want of pecuniary means, or other misfortune.

[Cited in Manning v. Cape Ann Isinglass & Glue Co., Case No. 9,041.]

2. The public use, in this case, held not to have been experimental, the inventor having himself manufactured and sold machines containing the invention, through several years, and having allowed such machines to be used thence onward, for six more years, before applying for his patent.

3. A merely experimental use, made in good faith, and not in such wise as to amount to a fraud upon the public, misleading them into a use, in the belief that it is free, does not destroy the exclusive right of an inventor.

4. What constitutes an "allowance," by an inventor, of a public use of his invention, although there are no words of consent, his consent and allowance being inferred from acquiescence.

5. A defence, that the patent was invalid, because of such consent and allowance, being sustained, the bill was dismissed, but, under the circumstances, without costs.

This was a final hearing, on pleadings and proofs, on a bill [by William Sisson and others against David Gilbert and others] to restrain the alleged infringement of letters patent granted September 24th, 1861, to the complainant Sisson, for an "improvement in machine for making staves from bolts," for which application was made in November, 1859, and of which patent the complainants were owners. The bill sought, also, an account and damages.

J. H. Townsend, for complainants.

F. A. Macomber, for defendants.

WOODRUFF, Circuit Judge. The claim of the patentee, in his specification, is confined to two particulars: 1st. Certain rib guides, projecting from the guide-bar, against the narrow surfaces of which the stave bolt rests, arranged in combination with the vibratory bed, in form and position concentric therewith, through the open spaces between which ribs the chips and splinters, cut off by the knife, fall, without clogging the machine; 2d. The employment of a strip of wood with the ends of the grain upwards, inserted in a groove in the bed, along the line where the bed comes in contact with the edge of the knife, and having, at the bottom of the groove, a supporting plate, or bar of iron, or other strong material, made adjustable by means of set screws, or equivalent means, to sustain it firmly along its entire length, to raise or

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission.]

lower the supporting bar, by which, when the surface end of the strip of wood is cut away, it may be raised in the groove, pared off, and so present an unimpaired surface to the knife. Nothing else described in the specification of the patentee is secured to him by the patent.

As to both of these devices, I am constrained to say, that, in my judgment, the proof shows, that both were in public use and on sale, with the consent and allowance of the patentee, more than two years before his application for a patent. If this be so, then, however great the hindrances to such application, and whether caused by the want of pecuniary means, or other misfortune, the right to the future exclusive use was lost. This may be a great hardship, and so may properly induce a court to require very clear proof, and dispose them to give full weight to the prima facie evidence which the granting of the patent itself imports, in support of the patentee's title; but, if such use and sale be, nevertheless, established, there is no alternative—the court has no discretion. The right claimed depends upon express statute, and exists only by its force and according to its terms; and, by that statute, such sale and use are a full defence to the inventor's claim. Act July 4, 1836, §§ 6, 15 (5 Stat. 119, 123); Act March 3, 1839, § 7 (5 Stat. 354).

My conclusion rests mainly upon the testimony of Sisson, the patentee, himself, and of the witnesses called by the complainants, from which, I think, it appears, that, in 1845, Sisson was employed by Crossett, the patentee of a stave machine, to do work for him, in the manufacture of his machines, at Fulton, N. Y., and that Sisson then suggested to Crossett's partner the improvement first claimed in the above named specification, and then placed rib-guides, or projections upon the wooden guide by them theretofore used, and, soon after, and in the same year, replaced the wooden guide or gauge with an iron one, and "manufactured the stave machine after that with those improvements;" and that, after Crossett left Fulton, in August, 1845, the present patentee continued to manufacture and sell to parties who held town rights under Crossett's patent. He varied the extent of the projection, and varied the number of such projecting rib guides, from three to four, and finally to five, which last number, he says, he settled upon, although his model, deposited in the patent office, by which, if the number constitutes a material part of his invention, he is bound, contains but four. He thinks he made these ribs substantially as they are now prior to May 1st, 1853, and the last machine he made he made in April, 1853, and he made them for the parties who owned territorial rights to Crossett's patent.

There seems to me little room to say, upon this evidence—without recurring to the testimony of other witnesses, or to the testimony of the making and sale by others of machines having such ribs, of which he had knowledge —that this improvement was not on sale or in use with the consent and allowance of the inventor.

In like manner, he made an improvement, in 1845, in Crossett's machine, by a groove in the bed, and the insertion of wood having the grain endwise, to receive the blow of the knife when it struck through the bolt; and this he, thereafter, used and sold in the machines made by him, down to and including the last machine made, as he says, in April, 1853. He does not give the precise date when the bar in the grooves, with set screws to raise the strips of wood, when partially cut away by the knife, was introduced; but the complainants' witness, who worked for the patentee as millwright and pattern maker, testified, distinctly, that it was put in many machines before 1851.

True, the patentee says, in his testimony, that the last machine which he made was the only one that had the complete improvement; but, on examination of his own evidence, it appears that no changes were made, except the variation in the number and extent of projections of the guide bars, and in the thickness or weight of the bar placed in the groove. These were not of the substance of the invention. The patentee would hardly claim that any third party may use six guide bars instead of four, or a bar in the groove half an inch thick instead of a quarter, and not infringe his patent. All this was done before the 1st of May, 1853, and the machines had gone into the use for which this patentee made them.

It seems to me that this is, as matter of law, within the statute, and a defence. The patentee calls this seven years, making and selling machines with the improvements, experimental, for the purpose of ascertaining and developing their utility; and he estimates the number of machines that he made between 1845 and 1853, as not more than twelve. It is settled, that a merely experimental use, made in good faith, and not in such wise as to amount to a fraud upon the public, misleading them into a use, in the belief that it is free, does not destroy the exclusive right of an inventor; but, in the face of the evidence of continued manufacture and sale through several years, and the allowance of such use thence onward, for six more years, before the patent was applied for, I think that statement will not avail the complainants.

It is, also, difficult to say, that the information which the inventor had of the manufacture and sale of machines with his improvements by Dutton & Co., within three hundred yards of his shop, of their surreptitious procurement of his patterns to be copied for the purpose, and his information of the manufacture and sale of his improvements at Rochester, not followed up or even investigated by him, the former, especially, continuing for eight or ten years before the application for the patent was made, were not such a permitting of the public use and sale of the improvements, as constitutes an allowance thereof, within the meaning of the law, al-

though there were no words of consent. Consent and allowance may be inferred from acquiescence.

It is not without regret that I am compelled to conclude, that, either through ignorance of the law, or want of means or aid in procuring the patent for a meritorious invention, the patentee placed himself in a situation in which this action cannot be sustained.

The bill must, therefore, be dismissed, but, under the circumstances, without costs.